Case 2:25-CV-02196-DWL

MA

Michael A Alston
1370 East Cottonwood Road
San Tan Valley, AZ 85140
480-845-1554

Pro Se

FILED ___ LODGED
___ RECEIVED ___ COPY

OCT 2 0 2025

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael A Alston,<br><br>   Plaintiff,<br><br>v.<br><br>Midland Credit Management, et al.,<br><br>   Defendants. | Case No. CV-25-02196-PHX-DWL<br><br>**PLAINTIFF'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS** |

Plaintiff Michael Alston, hereby move this Court for an Order compelling arbitration of all claims asserted by Plaintiff in this action and staying all proceedings pending completion of arbitration, pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16.

**I. INTRODUCTION AND RELIEF SOUGHT**

Plaintiff respectfully request that this Court: (1) compel arbitration of all claims asserted by in this action pursuant to the binding arbitration agreement contained in the Synchrony Bank/PayPal Credit Terms and Conditions that governs the parties' relationship; and (2) stay all proceedings in this action pending completion of arbitration as required by Section 3 of the FAA, 9 U.S.C. § 3.

Case 2:25-CV-02196-DWL

MA

This Motion is based on the undisputed fact that Plaintiff entered into a valid and enforceable agreement to arbitrate all disputes arising from or relating to Plaintiff's Synchrony Bank/PayPal Credit account. The arbitration agreement expressly covers the claims asserted in this action, including all statutory and common law claims alleged by Plaintiff. As demonstrated below, all prerequisites for compelling arbitration under the FAA have been satisfied, and the Court must enforce the parties' agreement to arbitrate.

## II.  STATEMENT OF FACTS

On or about June 25, 2016, Plaintiff opened a PayPal Credit line under account number 5049-9061-3271-3850 ("Account"). In connection with opening the Account, Plaintiff agreed to be bound by the PayPal Credit Terms and Conditions ("Agreement"), which contains a comprehensive arbitration provision. The Agreement explicitly provides that most disputes between the parties will be subject to individual arbitration.

The arbitration provision in the Agreement is prominently displayed in all capital letters and states: "PLEASE READ THIS SECTION CAREFULLY. IF YOU DO NOT REJECT IT, THIS SECTION WILL APPLY TO YOUR ACCOUNT, AND MOST DISPUTES BETWEEN YOU AND US WILL BE SUBJECT TO INDIVIDUAL ARBITRATION." The provision further explains that arbitration means: "(1) NEITHER A COURT NOR A JURY WILL RESOLVE ANY SUCH DISPUTE; (2) YOU WILL NOT BE ABLE TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING; (3) LESS INFORMATION WILL BE AVAILABLE; AND (4) APPEAL RIGHTS WILL BE LIMITED". *See*: Exhibit A.

The arbitration provision broadly covers "any dispute or claim between you… and us… that directly or indirectly arises from or relates to your account, your account Agreement or our relationship." It specifically includes "disputes about an account transaction, fees, charges or interest," "credit reporting," and "the collection of amounts due by our assignees, service

Case 2:25-CV-02196-DWL

MA

providers, or agents and the manner of collection." The Agreement designates the American Arbitration Association ("AAA") rules to govern any arbitration proceedings.

On March 28, 2025, Plaintiff filed this lawsuit against Defendant Synchrony Bank, asserting claims for violations of the Electronic Fund Transfer Act and Regulation E, and Arizona Consumer Fraud Act. Additionally, Plaintiff also asserted claims against Midland Credit Management, Midland Funding LLC., and Encore Capital Group for violations pursuant to the Fair Debt Collection Practices Act, the Fair Credit Reporting Act, and Arizona Revised Statute 12-548. Defendant Midland Credit Management was served with the Complaint on May 22, 2025. Midland Funding LLC was served with the Complaint on June 06, 2025. Encore Capital Group was served with the Complaint on May 23, 2025. Synchrony Bank was served with the Complaint on June 11, 2025.

### III. LEGAL STANDARD

Motions to compel arbitration are evaluated under a standard similar to summary judgment. The Court must determine: (1) whether a valid agreement to arbitrate exists; and (2) whether the agreement encompasses the dispute at issue. If both questions are answered in the affirmative, the FAA requires the Court to enforce the arbitration agreement according to its terms.

The FAA establishes "a liberal federal policy favoring arbitration agreements." Under Section 2 of the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. When a valid arbitration agreement exists, Section 3 of the FAA requires courts to stay litigation of arbitrable claims pending arbitration, and Section 4 provides for orders compelling arbitration when a party has failed to comply with an arbitration agreement. 9 U.S.C. §§ 3, 4.

Case 2:25-CV-02196-DWL

MA

## IV. ARGUMENT

**A. A Valid and Enforceable Arbitration Agreement Exists Between the Parties**

Under Arizona law, the essential elements of a valid contract are an offer, acceptance, consideration, and sufficient specification of terms so that the obligations involved can be ascertained. Here, all elements are satisfied. Synchrony Bank/PayPal offered PayPal Credit Terms and Conditions, including the arbitration provision, to Plaintiff. Plaintiff accepted those terms by opening and using the Synchrony Bank/PayPal Credit account. The extension of credit served as consideration for Plaintiff's agreement to the terms, including the arbitration provision.

Plaintiff's opening and use of the Account constitutes an unambiguous manifestation of assent to the Agreement's terms, including the arbitration provision. Courts routinely uphold arbitration agreements in consumer financial service contracts where as here, the consumer (Plaintiff) demonstrates acceptance through account activation and use. The arbitration provision was presented in a clear and conspicuous manner, with capitalized text drawing attention to its importance and explaining the consequences of agreeing to arbitration.

The Agreement specifically incorporates the AAA Consumer Arbitration Rules, which provide additional procedural protections for consumers. The AAA rules are readily available to the public and are incorporated by reference into the Agreement. This incorporation is valid and enforceable under Arizona law.

**B. The Arbitration Agreement Encompasses All of Plaintiff's Claims**

The arbitration provision in the Agreement is exceptionally broad, covering "any dispute or claim" that "directly or indirectly arises from or relates to" Plaintiff's account, the Agreement, or the parties' relationship. Courts consistently enforce such broad arbitration provisions according to their terms. Each of Plaintiff's claims falls squarely within the scope of the arbitration provision:

Case 2:25-CV-02196-DWL

MA

### Claims Pursuant to Synchrony Bank

1. **Electronic Fund Transfer Act (EFTA) and Regulation E Claims:**

These claims relate directly to account transactions and the handling of electronic fund transfers associated with Plaintiff's Account, which are explicitly covered by the arbitration provision.

Sometime between June 24, 2019, and July 09, 2019, Synchrony Bank violated the EFTA and Regulation E when they engaged in an unauthorized balance transfer ("the debt") moving money (balance) from Plaintiff's PayPal personal account ending in 3850 (Original Account) to a new acquired account purchased from Comenity Bank on June 24, 2019, ending in 6322 (New Account). The unauthorized balance transfer was listed as "Previous Balance" on the account billing statement ending in 6322 dated July 09, 2019. Plaintiff was unaware of the electronic fund balance transfer. Plaintiff did not receive notification of the balance transfer. 15 U.S.C.§1693f.(f); 15 U.S.C. §1693c.(a), (b); 15 U.S.C. §1693a (7), (12); and PayPal User Agreement: "What is an Unauthorized Transaction".

Moreover, Plaintiff did not receive a benefit from the unauthorized balance transfer noted above because the Synchrony Bank/PayPal account ending in 6322 was charged off on November 6, 2019, and was sold to a debt buyer Midland Credit Management et al, on August 19, 2023.

On March 20, 2025, Plaintiff first learned of this unauthorized transfer of funds after obtaining and reviewing Synchrony Bank/PayPal personal credit card billing statements ending in 3850 and 6322 from the Consumer Financial Protection Bureau (CFPB) and the Arizona Department of Insurance and Financial Institutions.

As a result of the action taken by Synchrony Bank, the Plaintiff has experienced non-economic impacts such as anxiety, anger, depression, negative credit score, and the stress of defending a breach of contract civil lawsuit.

Case 2:25-CV-02196-DWL

MA

2. **Arizona Consumer Fraud Act Claims (ACFA):**

These claims concern representations or practices related to Plaintiff's account and are therefore within the scope of disputes "relating to" the Account or the parties' relationship.

Sometime between June 24, 2019, and July 9, 2019, Synchrony Bank violated the ACFA when they engaged in an unauthorized balance transfer ("the debt") without disclosing the transaction to Plaintiff.

Between June 24, 2019, and July 09, 2019, Synchrony Bank moved funds ("the debt") from PayPal credit personal account ending in 3850 to an acquired PayPal account ending in 6322 listed as "previous balance" without authorization from Plaintiff. A.R.S. § 44-1522(A); 15 U.S.C.§1693f.(f); 15 U.S.C. §1693c.(a)(b); 15 U.S.C. §1693a (7)(12); and PayPal User Agreement: "What is an Unauthorized Transaction".

Synchrony Bank/PayPal credit services fall under the ACFA because they engage in selling financial products and services and they operate in Arizona.

Synchrony Bank intended that others like Midland Credit Management et al., and the Plaintiff to rely upon Synchrony Bank/PayPal credit account billing statement ending in 6322, especially when they sold the Synchrony Bank/PayPal personal credit account to Midland Credit Management et al., on or around August 19, 2023.

On March 20, 2025, Plaintiff first learned of this unauthorized transfer of funds after obtaining and reviewing Synchrony Bank/PayPal personal credit card billing statements ending in 3850 and 6322 from the Consumer Financial Protection Bureau (CFPB) and the Arizona Department of Insurance and Financial Institutions.

As a direct and proximate result of Synchrony Bank actions, Plaintiff sustained damages in the form contract and of out-of-pocket expenses.

Case 2:25-CV-02196-DWL

MA

As a direct and proximate result of Synchrony Bank's actions, the Plaintiff has experienced non-economic damages, which include, but are not limited to, defending a breach of contract civil lawsuit under the account ending in 6322, anxiety, depression, and anger.

### Claims Pursuant to Midland Credit Management, Midland Funding LLC., and Encore Capital Group

1. **Fair Debt Collection Practices Act Claims:**

The arbitration provision explicitly covers "the collection of amounts due by our assignees, service providers, or agents and the manner of collection," which directly encompasses FDCPA claims.

Defendants Midland Credit Management, Midland Funding LLC., and Encore Capital Group violated federal law by falsely representing the character, amount, or legal status of the Synchrony Bank/PayPal Debt ending in 6322 in the Declaration and Field Payment Data executed by employee Mr. David Crewe on September 23, 2024.

As a result of the Defendants Midland Credit Management, Midland Funding LLC, and Encore Capital Group violation of the FDCPA, the Plaintiff has suffered actual (non-economic) damages, including defending a breach of contract civil lawsuit, emotional distress, anxiety, frustration and embarrassment.

2. **Fair Credit Reporting Act Claims (FCRA):**

The arbitration provision specifically includes "credit reporting" disputes, which directly covers FCRA claims.

For example, sometime on or around December 28, 2023, Defendants Midland Credit Management et al., violated the FCRA when they submitted re-aged credit data to the three credit reporting agencies. Moreover, between December 28, 2024, and February 28, 2025, Midland Credit Management et al., failed to conduct a reasonable investigation into the

Case 2:25-CV-02196-DWL

MA

accuracy of the information they had furnished to the three credit reporting agencies and failed to update or correct their inaccurate reporting.

On March 1, 2025, the three credit reporting agencies removed the collection activity from Plaintiff's credit report.

Plaintiff has suffered actual (non-economic) damages, including but not limited to damage to his credit reputation, decreased credit score, denial of credit, emotional distress, anxiety, frustration, and embarrassment.

    3.    **Arizona Revised Statutes § 12-548:**

This violation relates to the statute of limitations for actions on debt, which fall within the broad category of disputes relating to Plaintiff's account or the parties' relationship.

Defendant Midland Credit Management, Midland Funding LLC, and Encore Capital Group attempted to collect on a Synchrony Bank/PayPal personal credit account debt 8 years after the alleged account was opened.

    **C. Defendants Midland Credit Management, Midland Funding LLC., and Encore Capital Group Have Not Waived Their Right to Arbitration**

Defendants Midland Credit Management, Midland Funding LLC, and Encore Capital Group have not waived their right to arbitration. This Motion is being filed promptly after Defendants were served with the Complaint. Midland Credit Management, Midland Funding LLC, and Encore Capital Group have not taken any steps in this litigation that would be inconsistent with an intent to arbitrate.

    **D. Defendant Synchrony Bank May Have Waived Their Right to Arbitration**

Defendant Synchrony Bank may have waived their right to arbitration when on October 15, 2025, they filed a Motion to Dismiss with Prejudice for Failure to State a Claim with this Court. Synchrony Bank's motion could be considered a waiver of arbitration according to the U.S. Supreme Court. "In the 2022 case of Morgan v. Sundance, Inc., the U.S. Supreme Court

Case 2:25-CV-02196-DWL

MA

ruled that a party waives its right to arbitrate by acting inconsistently with that right, without the need to show prejudice to the other party. The Court held that the Federal Arbitration Act (FAA) requires arbitration clauses to be treated like any other contract, and its policy favoring arbitration does not allow courts to create special, arbitration-specific rules like a mandatory prejudice requirement for waiver". Morgan v. Sundance, Inc., No. 21-328 (May 23, 2022).

The U.S. Supreme Court has held that a party can waive its right to arbitration if it knowingly acts in a way that is inconsistent with that right. Filing a motion to dismiss with prejudice is a classic example of such an inconsistent action, as it seeks a definitive court ruling on the case's merits instead of moving the dispute to arbitration.

Defendant Synchrony Bank's motion filed on October 15, 2025, is an attempt to game the system by ignoring its own contractual obligations pursuant to resolving disputes according to Synchrony Bank/PayPal Terms and Conditions. The action taken by Synchrony Bank on October 15, 2025, does seem to be inconsistent with an intent to arbitrate, thus the avoidance of arbitration and the refrainment of arbitration fees and costs.

**E. The Court Must Stay, Not Dismiss, This Action Pending Arbitration**

Section 3 of the FAA provides that when a court determines that a dispute is subject to arbitration, the court "shall… stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. The mandatory language of Section 3 requires a stay rather than dismissal of the action.

A stay preserves the parties' rights to return to court if necessary, after arbitration, such as to confirm, modify, or vacate an arbitration award. A stay also ensures that the statute of limitations is tolled during the pendency of arbitration, protecting Plaintiff's right to pursue claims in court if the arbitration agreement is ultimately determined to be unenforceable for any reason.

Case 2:25-CV-02196-DWL

MA

A stay preserves the parties' rights to return to court if necessary, after arbitration, such as to confirm, modify, or vacate an arbitration award. A stay also ensures that the statute of limitations is tolled during the pendency of arbitration, protecting Plaintiff's right to pursue claims in court if the arbitration agreement is ultimately determined to be unenforceable for any reason.

### F. Fee Allocation and Consumer Protections

The arbitration agreement provide that Defendants are responsible for paying "arbitration costs and fees of the administrator or arbitrator." This provision ensures that Plaintiff's access to the arbitral forum is not impeded by financial constraints. Additionally, Plaintiff has indicated indigent status, having received an "Order Regarding Deferral or Waiver of Court Fees and Costs" from the Superior Court of Arizona in Pinal County on March 28, 2025.

The AAA Consumer Arbitration Rules provide further protection for consumers with limited financial resources. Under these rules, consumers may apply for a hardship waiver of arbitration fees based on financial circumstances. Given Plaintiff's reported income sources of Social Security Disability Income and Supplemental Nutrition Assistance Program, Plaintiff would likely qualify for such a waiver.

Synchrony Bank/PayPal acknowledge their contractual obligation in the PayPal User Agreement to pay the arbitration costs and fees. Plaintiff requests that the Court enforce this fee provision as part of its order compelling arbitration, ensuring that Plaintiff's financial circumstances do not prevent access to the arbitral forum.

Case 2:25-CV-02196-DWL

MA

## V. CONCLUSION AND PRAYER FOR RELIEF

For the foregoing reasons, Plaintiff respectfully requests that this Court:

1. Deny Synchrony Bank's Motion to Dismiss with Prejudice and compel to arbitration as required by Synchrony Bank and PayPal Terms and Conditions;

2. Order Defendants to submit all claims asserted in this action to binding arbitration in accordance with the terms of the arbitration agreement contained in the Synchrony Bank and PayPal Credit Terms and Conditions;

3. Stay all proceedings in this action pending completion of arbitration pursuant to 9 U.S.C. § 3 S;

4. Due to Plaintiff's indigent status and Synchrony Bank's attempt to ignore its own arbitration clause, the Plaintiff respectfully requests that the Court enforce the fee allocation provision in the arbitration agreement requiring Defendant(s) to pay the arbitration costs and fees of the administrator and arbitrator; and

5. Grant such other and further relief as the Court deems just and proper.

Dated: October 20, 2025

_Michael A. Alston_
Michael A. Alston

Case 2:25-CV-02196-DWL

MA

# CERTIFICATE OF SERVICE

I certify that on the 20th day of October 2025, I submitted the attached document to the Clerk's office for filing and transmittal of Notice of Electronic Filing to the following CM/ECF registrants:

Michael A Alston
1370 East Cottonwood Road
San Tan Valley, AZ 85140
alston@mediacombb.net
***Plaintiff Pro Se***

Adam T. Reich, Esq.
Andrew Jacobsohn, Esq.
Womble Bond Dickerson LLP
201 East Washington Street, Suite 1200
Phoenix, AZ 85004
adam.reich@wbd-us.com
andrew.jacobsohn@wbd-us.com
***Attorneys for Defendants Synchrony Bank***

Brett B. Larsen, Esq.
M. Victoria Smith, Esq.
Hinshaw & Culbertson LLP
2375 East Camelback Road, Suite 410
Phoenix, AZ 85016
***Attorneys for Midland Credit Management et al.***

Case 2:25-CV-02196-DWL

MA

**EXHIBIT A**

PayPal Credit

# PAYPAL CREDIT TERMS AND CONDITIONS

PayPal Credit is an open-end (revolving) credit card account offered by Synchrony Bank (the "Lender"). By applying for this account, you agree:

▼ Read More

- To these Terms and Conditions, which include the Agreement and the Privacy Policy, which will govern your account, including a resolving a dispute with arbitration provision (which limits your rights unless **(a) you reject the provision by following the provision's instructions; or, (b) you are covered by the Military Lending Act Disclosure (included in the Agreement)**).
- You're providing information to the Lender and PayPal, Inc., and you consent to the Lender providing information about you (even if this application is declined) to PayPal, Inc.
- The Lender may obtain credit reports and other information, including employment and income, about you to evaluate your application and for other purposes.
- If we identify that you have an existing PayPal Credit account, your purchase will be charged to your existing account (subject to available credit line) and a new account will not be opened.

## ACCOUNT AGREEMENT
### RATES AND FEES TABLE

| INTEREST RATES AND INTEREST CHARGES | |
|---|---|
| **Annual Percentage Rate (APR) for Purchases** | **30.39%**<br>This APR will vary with the market based on the Prime Rate*. |
| **APR for Cash Advances** | 30.39%<br>This APR will vary with the market based on the Prime Rate*. |
| **Penalty APR and When it Applies** | 34.99%<br>This APR will vary with the market based on the Prime Rate*.<br>**This APR may be applied to your account if you make a late payment.**<br>**How long Will the Penalty APR Apply?:** If your APRs are increased for this reason, the Penalty APR may remain in effect indefinitely. |
| **Paying Interest** | Your due date is at least 23 days after the close of each billing cycle. We will not charge you any interest on non-promotional transactions if you pay your entire balance by the due date each month. We will begin charging interest on promotional purchases on the purchase date. |

| | |
|---|---|
| | the laws of Utah without regard to its conflicts of law principles. This Agreement has been accepted by us in Utah. |
| **Waiver** | We may give up some of our rights under this Agreement. If we give up any of our rights in one situation, we do not give up the same right in another situation. |

## RESOLVING A DISPUTE WITH ARBITRATION

PLEASE READ THIS SECTION CAREFULLY. IF YOU DO NOT REJECT IT, THIS SECTION WILL APPLY TO YOUR ACCOUNT, AND MOST DISPUTES BETWEEN YOU AND US WILL BE SUBJECT TO INDIVIDUAL ARBITRATION. THIS MEANS THAT: (1) NEITHER A COURT NOR A JURY WILL RESOLVE ANY SUCH DISPUTE; (2) YOU WILL NOT BE ABLE TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING; (3) LESS INFORMATION WILL BE AVAILABLE; AND (4) APPEAL RIGHTS WILL BE LIMITED.

1. **CLAIMS AND PARTIES.** If either you or we make a demand for arbitration, you and we must arbitrate any dispute or claim between you (including any other user of your account), and us (including our parents, affiliates, agents, employees, officers, and assignees, and PayPal, Inc. and its affiliates) that directly or indirectly arises from or relates to your account, your account Agreement or our relationship, except as noted below. In addition, any assignee, agent, or service provider of ours that collects amounts due on your account are intended beneficiaries of this Arbitration section and may enforce it in full (notwithstanding any state law to the contrary).

2. This Arbitration section broadly covers claims, including counterclaims, based upon contract, tort, consumer rights, fraud and other intentional torts, negligence, constitution, statute, regulation, ordinance, common law and equity and claims for money damages and injunctive or declaratory relief, even if they arose before this section took effect. You may not sell, assign or transfer a claim.

3. Examples of claims subject to arbitration are disputes about an account transaction, fees, charges or interest, the events leading up to the Agreement (such as any disclosures, advertisements, promotions or oral or written statements, warranties or representations made by us), an application for or denial of credit, any product or service provided by us or third parties in connection with the Agreement, credit reporting, benefit programs related to your account including any reward program, the collection of amounts due by our assignees, service providers, or agents and the manner of collection.

4. However, we will not require you to arbitrate any individual case in small claims court or your state's equivalent court, so long as it remains an individual case in that court. Also, even if all parties have opted to litigate a claim in court, you or we may elect arbitration with respect to any claim made by a new party or any claim later asserted by a party in any related or unrelated lawsuit, including modifying an individual claim to assert a class, representative or multi-party claim. Arbitration may be requested at any time, even where there is a pending lawsuit, unless a trial has begun, or a final judgment entered.

5. Only a court will decide disputes about the validity, enforceability, coverage or scope of this Arbitration section or any part thereof. However, any dispute that concerns the validity or enforceability of the Agreement as a whole is for the arbitrator to decide.

6. **NO CLASS ACTIONS.** IF EITHER YOU OR WE ELECT TO ARBITRATE A CLAIM, NEITHER YOU NOR WE WILL HAVE THE RIGHT (A) TO PARTICIPATE IN A CLASS ACTION, PRIVATE ATTORNEY GENERAL ACTION OR OTHER REPRESENTATIVE ACTION IN COURT OR IN

ARBITRATION, EITHER AS A CLASS REPRESENTATIVE OR CLASS MEMBER, OR (B) TO JOIN OR CONSOLIDATE CLAIMS WITH CLAIMS OF ANY OTHER PERSONS EXCEPT ACCOUNTHOLDERS ON YOUR ACCOUNT. THUS, YOU MAY NOT BRING CLAIMS AGAINST US ON BEHALF OF ANY ACCOUNTHOLDER WHO IS NOT AN ACCOUNTHOLDER ON YOUR ACCOUNT, AND YOU AGREE THAT ONLY ACCOUNTHOLDERS ON YOUR ACCOUNT MAY BE JOINED IN A SINGLE ARBITRATION WITH ANY CLAIM YOU HAVE.

7. **PROCEDURES.** The party who wants to arbitrate must notify the other party in writing. This notice can be given after the beginning of a lawsuit or in papers filed in the lawsuit. Otherwise, your notice must be sent to Synchrony Bank, Legal Operation, P.O. Box 29110, Shawnee Mission, KS 66201-5320, ATTN: ARBITRATION DEMAND. The party seeking arbitration must select either the American Arbitration Association (AAA), 120 Broadway, Floor 21, New York, NY 10271, www.adr.org, or JAMS, 620 Eighth Avenue, 34th Floor, New York, NY 10018, www.jamsadr.com, to administer the arbitration. If neither administrator can handle the dispute, a court with jurisdiction will appoint an arbitrator.

8. The arbitration administrator will appoint the arbitrator and will tell the parties what to do next. The arbitrator must be a lawyer with at least ten years of legal experience. The arbitrator must apply the same law, consistent with the Federal Arbitration Act (FAA), that would apply to an individual action in court, but may use different procedural rules. The arbitrator will apply the same statutes of limitation and privileges that a court would apply if the matter were pending in court.

9. The arbitrator may award any damages or other relief or remedies that would apply under applicable law to an individual action brought in court, including, without limitation, punitive damages (governed by the Constitutional standards employed by the courts) and injunctive, equitable and declaratory relief (but only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim). The parties will bear the fees and costs of their attorneys, witnesses and experts. However, the arbitrator will have the authority to award fees and costs of attorneys, witnesses and experts to the extent permitted by the Agreement, the administrator's rules or applicable law.

10. The arbitration will take place by phone or at a location reasonably convenient to you. If you ask, we will pay all the fees the administrator or arbitrator charges if you cannot obtain a waiver of fees from the administrator and are acting in good faith. We will pay arbitration costs required by the administrator's rules or that are necessary for this Arbitration section to be enforced. Notwithstanding the foregoing, you will be required to advance half of all administrative fees and arbitrator's fees (and to be responsible for payment of such fees to the extent not advanced) if you pursue arbitration as part of a group of similar arbitrations, or if you otherwise seek to participate in a mass arbitration proceeding. If an arbitration already in process is later determined to be part of a mass arbitration proceeding, we shall have the right to request that the arbitrator order you to reimburse us for fees already paid or advanced.

11. **GOVERNING LAW.** This Arbitration section is governed by the FAA. Utah law shall apply to the extent state law is relevant under the FAA, unless otherwise stated herein. The arbitrator's award will be final and binding, except for any appeal right under the FAA. Any court with jurisdiction may enter judgment upon the arbitrator's award. The arbitration award and any judgment confirming it will apply only to the specific case and cannot be used in any other case except to enforce the award.

12. **SURVIVAL.** This Arbitration section shall survive the repayment of all amounts owed, the termination, cancellation or suspension of the Agreement or your account or credit privileges, any legal proceeding, and any bankruptcy by you, to the extent consistent with applicable bankruptcy law. If this Arbitration section conflicts with the applicable arbitration rules or the other provisions of the Agreement, this Arbitration section shall govern.

13. **SEVERABILITY.** If any portion of this Arbitration section is held to be invalid or unenforceable, the remaining portions shall nevertheless remain in force with the following two exceptions. First, if a determination is made that the "No Class Actions" provision is unenforceable, and that determination is not reversed on appeal, then this Arbitration section shall be void in its entirety. Second, if a court determines that a public injunctive relief claim may proceed notwithstanding the "No Class Actions" provision, and that determination is not reversed on appeal, then the public injunctive relief claim will be decided by a court, and any individual claims will be arbitrated. The parties will ask the court to stay the public injunctive relief claim until the other claims have been finally concluded.

14. **HOW TO REJECT ARBITRATION.** You may reject this Arbitration section. If you do that, a court will resolve any dispute or claim. To reject this section, send us a notice within 45 days after you open your account or we first provided you with your right to reject this section. The notice must include your name, address, account number, and personal signature, and must be mailed to Synchrony Bank, PO Box 71734, Philadelphia, PA 19176-1734. This is the only way you can reject this section. Rejecting this Arbitration section will not affect any other provision of the Agreement. It will also not affect any prior arbitration agreement or dispute resolution provision between you and us, which will remain in full force and effect. If you don't reject this Arbitration section, it will be effective as of the date of the Agreement and will supersede any prior arbitration agreement between you and us that would otherwise be applicable.

## OTHER IMPORTANT INFORMATION

**MILITARY LENDING ACT DISCLOSURE – NOTICE FOR ACTIVE DUTY MILITARY MEMBERS AND THEIR DEPENDENTS**

The following disclosures apply to you if, at the time your account is opened, you are a "covered borrower" as defined in the Military Lending Act, which includes eligible active duty members of the Armed Forces and their dependents.

1. The provision in this Agreement called "Resolving a Dispute with Arbitration" will not apply to your account.
2. Federal law provides important protections to members of the Armed Forces and their dependents relating to extensions of consumer credit. In general, the cost of consumer credit to a member of the Armed Forces and his or her dependent may not exceed an Annual Percentage Rate of 36 percent. This rate must include, as applicable to the credit transaction or account: the costs associated with credit insurance premiums; fees for ancillary products sold in connection with the credit transaction; any application fee charged (other than certain application fees for specified credit transactions or accounts); and any participation fee charged (other than certain participation fees for a credit card account).
3. You can call 1-855-367-4541 to hear the information in item 2 (above) and a description of the payment obligation for your account.

**STATE NOTICES**

| | |
|---|---|
| **CALIFORNIA RESIDENTS** | If you are married, you may apply for a separate account. |
| **OHIO RESIDENTS** | The Ohio laws against discrimination require that all creditors make credit equally available to all credit worthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law. |
| **NEW YORK RESIDENTS** | A consumer credit report may be obtained in connection with evaluating your application and subsequently in connection with updates, renewals, or extensions of credit for which this application is made. Upon your request, you will be informed whether a report was obtained, and if so, of the name and address of the consumer report agency. |
| **NEW JERSEY RESIDENTS** | **Certain provisions of this Agreement are subject to applicable law. As a result, they may be void, unenforceable or inapplicable in some jurisdictions. None of these provisions, however, is void, unenforceable or inapplicable in New Jersey.** |
| **TENNESSEE RESIDENTS** | This Agreement will not become effective unless and until we have (1) provided the disclosures required pursuant to the federal Truth in Lending Act, (2) you or an authorized user uses the account, and (3) we extend credit to you for that transaction on your account. |
| **WISCONSIN RESIDENTS** | No provision of a marital property agreement, a unilateral statement under sec. 766.59, Wis. Stats., or a court decree under sec. 766.70, Wis. Stats., adversely affects the interest of the creditor unless the creditor, prior to the time credit is granted, is furnished a copy of the agreement, statement or decree or has actual knowledge of the adverse provision when the obligation to the creditor is incurred. **Married residents of Wisconsin applying for an individual account must give us the name and address of their spouse if the spouse also is a Wisconsin resident, regardless of whether the spouse may use the card. Please provide this information to us at PO Box 71726, Philadelphia, PA 19176-1726.** |

Your signature on the online application represents your signature on this Agreement. It is incorporated herein by reference.

We have signed this Agreement as follows:

*[Signature: B D D]*

**Brian D. Doubles**
President and Chief Executive Officer
Synchrony Bank

# YOUR BILLING RIGHTS SUMMARY

*Your Billing Rights: Keep this Document for Future Use*

This notice tells you about your rights and our responsibilities under the Fair Credit Billing Act.

*What To Do If You Find A Mistake On Your Statement*

If you think there is an error on your statement, write to us at:

Synchrony Bank
PO Box 71725
Philadelphia, PA 19176-1726
Or call customer service
at 1-844-373-4961

If you write to us, in your letter, give us the following information:

- *Account information*: Your name and account number.
- *Dollar amount*: The dollar amount of the suspected error.
- *Description of problem*: If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake.

You must contact us:

- Within 60 days after the error appeared on your statement.
- At least 3 business days before an automated payment is scheduled, if you want to stop payment on the amount you think is wrong.

You must notify us of any potential errors *in writing or by calling customer service at 1-844-373-4961*.

*What Will Happen After We Receive Your Letter*

When we receive your letter, we must do two things:

1. Within 30 days of receiving your letter, we must tell you that we received your letter. We will also tell you if we have already corrected the error.
2. Within 90 days of receiving your letter, we must either correct the error or explain to you why we believe the bill is correct.

While we investigate whether or not there has been an error:

- We cannot try to collect the amount in question, or report you as delinquent on that amount.
- The charge in question may remain on your statement, and we may continue to charge you interest on that amount.
- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your credit limit.

After we finish our investigation, one of two things will happen: